# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH and JOSEPHINE A., by their
next friend, CORRINE WOLFE, et al.,

      Plaintiffs,

    vs.                                                                                No. CIV 80-0623 JC/DJS

DEBORAH HARTZ, in her official
capacity, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER came on for consideration of Defendants' Motion to Dismiss, filed November 19, 1999 *(Doc. 1560)*. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion will be granted on the grounds of abstention.

      Because the Court will abstain from any further proceedings in this case, Plaintiffs' Motion for Contempt for Defendants' Failure to Comply with the Terms of the Exit Plan, filed October 21, 1999 *(Doc. 1552)*, and Plaintiffs' Motion to Enforce the Terms of the Court-Ordered Exit Plan Concerning Monitoring, filed November 30, 1999 *(Doc. 1562)*, will be denied as moot.

**I.**     **Background**

      Plaintiffs, a class consisting of neglected and dependent children in the custody of the state of New Mexico, brought action against the New Mexico Department of Human Services, now the New Mexico Children, Youth and Families Department (CYFD), and certain state officials challenging their failure to develop permanent plans for placement or adoption of the children.

In 1982, the Court dismissed CYFD for all purposes, and dismissed the individual defendants in their official capacity to the extent that Plaintiffs seek damages. *See Joseph A., et al. v. New Mexico Dep't of Human Servs., et al.*, 575 F. Supp. 346 (1982). Thus, claims for prospective injunctive and declaratory relief remain against the natural defendants. *See id.*

In 1998, a Stipulated Exit Plan was agreed to and entered into by the parties. *See* Order, filed February 25, 1998 *(Doc. 1546)*. The Stipulated Exit Plan provides for graduated release from suit, as the defendants reach certain levels of compliance with the Exit Plan. Defendants have not been granted exit from any portion of the Stipulated Exit Plan at this time. The fulfillment of the Stipulated Exit Plan is in fact currently being argued before this Court. *See* Plaintiffs' Motion for Contempt for Defendants' Failure to Comply with the Terms of the Exit Plan, filed October 21, 1999 *(Doc. 1552)*; Plaintiffs' Motion to Enforce the Terms of the Court-Ordered Exit Plan Concerning Monitoring, filed November 30, 1999 *(Doc. 1562)*.

Although Defendants have previously raised both Eleventh Amendment immunity and abstention arguments in this case, based on recent developments in the Tenth Circuit, Defendants again seek dismissal on these grounds.

**II.** <u>**Analysis**</u>

    **A.** **Eleventh Amendment Immunity**

Generally, the Eleventh Amendment bars suits against a state in federal court "commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior*, 160 F.3d 602, 607 (10th Cir. 1998). However, the Eleventh Amendment does not preclude suits against state officers for injunctive relief, even when the remedy will enjoin the implementation of an official state policy. *See Ex Parte Young*, 209 U.S. 123 (1908). In *Ex Parte*

*Young*, the Supreme Court concluded that state officers have no authority to violate the Constitution and laws of the United States. *See id.* Hence, their illegal acts are stripped of state authority and are not precluded by the Eleventh Amendment. *See id.* at 159-160.

It was upon this foundation that Judge Burciaga first addressed Defendants' Eleventh Amendment immunity argument in 1982. *See Joseph A. et al., v. New Mexico Dep't of Human Servs., et al.,* 575 F. Supp. 346 (1982). Based on the Eleventh Amendment, Judge Burciaga granted Defendants' motion to dismiss as to the natural defendants in their official capacities for any damages claims brought by Plaintiffs. *See id.* at 353. However, Judge Burciaga stated that Defendants "concede, as they must, that a suit for injunctive and declaratory relief is proper." *Id.* Finally, Judge Burciaga granted the motion as against CYFD for any claims brought by Plaintiffs against it. *See id.*

Defendants argue that recent case law has redefined the approach to evaluating Eleventh Amendment immunity claims, necessitating a reevaluation of Judge Burciaga's decision to include dismissal of all defendants.[1] In support of their position, Defendants point to *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997). In *Coeur d'Alene*, the Supreme Court carved out a narrow exception to *Ex Parte Young*. *Coeur d'Alene* involved an Indian tribe's suit against Idaho officials over ownership and control of submerged lands. The Supreme Court held that title to submerged lands was a "special sovereignty interest" to which application of *Ex Parte Young* would undermine Idaho's sovereign interest in its lands and waters "to a degree fully intrusive as almost any

---

[1] Under the doctrine of law of the case, issues once decided that recur in later stages of the same case are not to be redetermined. While not a limit on a court's power, the doctrine reflects the general practice of courts to refuse to reopen what has been decided. Thus, prior rulings should only be revisited if there are changed circumstances or unforeseen issues not previously litigated. *See Wyoming v. Oklahoma*, 502 U.S. 437, 446 (1992).

conceivable retroactive levy upon the funds in its treasury." *Coeur d'Alene* at 287. Practically speaking, *Coeur d'Alene* has imposed a new requirement on the Eleventh Amendment immunity analysis: an examination of whether the relief sought implicates special sovereignty interests and whether the requested relief is the functional equivalent to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment. *See Elephant Butte* at 608.

Defendants argue that adjudication of this case is a sufficiently excessive intrusion into an area of special state sovereign interest so as to be barred by the Eleventh Amendment. *See ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178 (10th Cir.1998 ), *cert denied*, 525 U.S. 1122 (1999) (the power to assess and levy property taxes within a state involved special sovereignty interests); *Zuni Public Sch. Dist. v. State of N.M.*, No. CIV 99-0089 MV/LFG, Mem. Op. & Order, May 13, 1999 (D.N.M) (funding of state supported education lies in an area of law where states historically have been sovereign).

However, the exception carved out by *Coeur d'Alene* is a narrow one, described as "extreme and unusual," which has only been applied in limited scope. *Elephant Butte* at 612. For example, in *ANR Pipeline*, the Tenth Circuit made clear that their holding was based on the fact that "a state's sovereign power to tax its citizens has been a hallmark of the western legal tradition." *See ANR Pipeline* at 1193, n.16. Furthermore, the Court noted that "it is impossible to imagine that a state government could continue to exist without the power to tax." *Id.* at 1193.

In a strikingly similar case challenging the administration of the New Mexico child welfare system with regard to mentally or developmentally disabled children in state custody, the Tenth Circuit addressed Defendants' argument that the administration of the child welfare system is a "special sovereignty issue" for the state. *See J. B. v. Valdez,* 186 F.3d 1280, 1287 (10th Cir.1999).

In *J.B.*, the Court held that Plaintiffs had failed to raise special sovereignty issues as contemplated by *Coeur d'Alene*. *See id.* The Court stated that "a state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude application of *Ex Parte Young*." *Id*. Distinguishing *J.B.* from *ANR Pipeline*, the Court stated that "a challenge to the administration of a welfare program is not the equivalent of a suit for money damages, nor does it strike at a state's fundamental power, such as the power to tax." *Id.*

Likewise, the administration of a state's child welfare laws in regard to foster care and adoption do not constitute a core sovereign interest so as to preclude the application of *Ex Parte Young*. Therefore, based on the Tenth Circuit holding in *J.B. v. Valdez*, 186 F.3d 1280 (1999), I find that the narrow exception carved out by *Coeur d'Alene* would not apply in this case. Thus, the *Ex Parte Young* doctrine precludes Defendants' Eleventh Amendment immunity defense and Judge Burciaga's decision remains the opinion of this Court.

### B. Abstention

Judge Burciaga also addressed Defendants' abstention argument in his 1982 opinion. However, because the Court determined that the State made no attempt to show how the case fell within any of the abstention doctrines, Defendants' motion was denied. *See Joseph A. et al., v. New Mexico Dep't of Human Servs., et al.*, 575 F. Supp. 346, 350 (1982). Relying on *J.B. v. Valdez*, 186 F.3d 1280 (10th Cir. 1999), in which the Tenth Circuit affirmed the District Court's dismissal on abstention grounds, Defendants now seek to revisit the issue.

In *J.B.*, the plaintiffs sought declaratory and injunctive relief for mentally and developmentally disabled children in New Mexico state custody. *See id*. The only apparent difference between the claims in *J.B.* and the claims in this case is the reason for the children's custody by the state. In this

case, Plaintiffs seek declaratory and injunctive relief for foster and adoptable children in New Mexico state custody. Therefore, although *J.B.* did not create new or different abstention law, the Tenth Circuit's application of existing law in a case directly on point is binding on this Court. Given the similarity between *J.B.* and this case, I find it prudent to reexamine the merits of Defendants' abstention argument.

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction granted them, *see Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), they must on rare occasions abstain from exercising their jurisdiction in order to "avoid undue interference with states' conduct of their own affairs." *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir.1989). Where there is a pending state case, a federal court must abstain when the federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims. *See Younger v. Harris*, 401 U.S. 37 (1971).

As here, the Court in *J.B.* recognized that "there is an important state interest in the care, disposition and welfare of . . . children in its custody." *J.B. v. Valdez* at 1291. Thus, the Court's *de novo* review of the district court decision to abstain focused on the "whether there existed a pending state judicial proceeding in which the plaintiffs had an adequate opportunity to raise their federal claims." *Id.* Accordingly, the Court first found that given the continuing jurisdiction of the Children's Court to modify a child's disposition, and the mandatory six month periodic review hearings available for the children, the requirement of an ongoing state proceeding was met. *See id.* at 1292. Then, despite affidavits from two Children's Court judges, the Court found that the plaintiffs

had failed to demonstrate an inability to adjudicate their federal claims during the periodic review process.[2] *See id.* Finally, the Tenth Circuit concluded that abstention was proper.

Despite the unmistakable similarity between *J.B.* and this case, Plaintiffs attempt to distinguish *J.B.* based on the Tenth Circuit's denial of class certification. However, the distinction is not relevant to the abstention analysis. The class of children in this case consists of children committed to the custody of CYFD. Like the three remaining children in *J.B.*, children under New Mexico state custody for the purposes of foster care and adoption are also within the continuing jurisdiction of the Children's Court, *see* NMSA 1978 § 32A-4-24, and subject to mandatory six-month periodic review hearings. *See id.* at §32A-4-25. Therefore, unless Plaintiffs can demonstrate that the New Mexico Children's Court "lacks the jurisdiction or ability to adjudicate federal statutory and constitutional claims during authorized periodic review proceedings," this Court must abstain as directed by the Tenth Circuit. *J.B.* at 1293.

Plaintiffs assert that system wide issues could never be reached in individual cases because "they are simply not appropriate subjects within the context of a neglect or abuse case involving one family." *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 15, filed December 10, 1999 *(Doc. 1570)*. However, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15(1987). Plaintiffs have provided no such evidence to support their

---

[2] Plaintiffs in *J.B.* obtained affidavits from Children's Court judges who asserted that the Children's Court historically does not handle cases involving the federal rights of children. The judges pointed to the clogged dockets, limited discovery available and the summary nature of proceedings which render the court a poor forum in which to adjudicate matters of such importance. *See J.B. v. Valdez,* 186 F.3d 1280, 1297 n.1 (1999) (Briscoe, Circuit Judge, *dissenting*).

argument that the federal claims are beyond the scope of the Children's Court jurisdiction.[3] On the contrary, Plaintiffs' class indicates that these issues are pertinent to every family or child subject to Children's Court jurisdiction, hence, they are appropriate issues to be raised by any of the plaintiffs.

Consequently, like the Court in *J.B.,* I find that Plaintiffs have failed to provide "unambiguous authority" to support their argument that the Children's Court lacks jurisdiction to hear their claims. *J.B.* at 1293. Therefore, this Court must abstain.

## III. Conclusion

Although the *Ex Parte Young* doctrine would preclude Defendants' Eleventh Amendment immunity defense, this Court must abstain from jurisdiction based on the Tenth Circuit holding in *J.B. v. Valdez*, 186 F.3d 1280 (1999). This case will therefore be dismissed without prejudice. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, (1996) ("Where relief being sought is equitable in nature . . . courts . . . based on abstention principles . . . can . . . in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court").

The Court need not decide Plaintiffs' Motion for Contempt for Defendants' Failure to Comply with the Terms of the Exit Plan, filed October 21, 1999 *(Doc. 1552)*, and Plaintiffs' Motion to Enforce the Terms of the Court-Ordered Exit Plan Concerning Monitoring, filed November 30, 1999 *(Doc. 1562)*, as they will be denied as moot.

---

[3] In *J.B.*, the Tenth Circuit was careful to hold merely that the plaintiffs failed to demonstrate that the Children's Court could not hear their federal statutory and constitutional claims. *See J.B.* at 1293, n.9. Specifically, the Court did not preclude federal court jurisdiction where the Children's Court has stated that it "cannot or will not adjudicate the claims." *Id.* Other than the affidavits submitted in *J.B.,* which the Tenth Circuit held insufficient, there has been no express refusal to adjudicate federal claims in Children's Court in this state.

Wherefore,

IT IS ORDERED that Defendants' Motion to Dismiss, filed November 19, 1999 *(Doc. 1560)*, is **granted**, on the basis of abstention, and Plaintiffs' complaint is **dismissed** without prejudice.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Contempt for Defendants' Failure to Comply with the Terms of the Exit Plan, filed October 21, 1999 *(Doc. 1552)*, and Plaintiffs' Motion to Enforce the Terms of the Court-Ordered Exit Plan Concerning Monitoring, filed November 30, 1999 *(Doc. 1562)*, are **denied as moot**.

DATED this 21st day of March, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:

> Susan Lambiase
> Marcia Robinson Lowry
> Children's Rights, Inc.
> New York, New York
>
> Robert Levy
> Geer, Wissel & Levy
> Albuquerque, New Mexico

Counsel for Defendants:

> Timothy V. Flynn-O'Brien
> Bryan & Flynn-O'Brien
> Albuquerque, New Mexico